Case 13-6434 Charles Hollis Jr. et al. v. Chestnut Bend Homeowners Association Oral argument, 15 minutes per side. Mr. Dane for the appellants. Morning, Your Honor. Morning. I'd like to reserve three minutes of my time for rebuttal, if I may. All right. Stephen Dane on behalf of the appellants in this case. We presented to you the issue of whether the McDonnell-Douglas analysis of circumstantial evidence applies to reasonable accommodation claims under the Fair Housing Act. The district court in this case applied McDonnell-Douglas to analyze the facts. This was improper. And it resulted in error. McDonnell-Douglas is a method of assessing circumstantial evidence of intent, where intent is a necessary element of the claim. And there's no direct evidence of intent available to the plaintiff. It's one method. There are others of proving an unlawful motive from circumstantial evidence. In contrast, a reasonable accommodation claim does not require intent to be proved as an element of the claim. This is because the language of the Fair Housing Act, as well as the other laws, the Rehabilitation Act, the ADA, as this court has said, creates an affirmative duty to act by the housing provider in response to a request for accommodation. Intent is irrelevant. So long as the request meets certain criteria, the landlord, the housing provider, whoever, insurance company, lender, has a duty to act on that. The elements of a successful reasonable accommodation claim do not include any discriminatory animus. Now, what Judge Trauger did in this case has been done before by district court judges around the country. And in every single one of those cases, when it got to the Court of Appeals, the Court of Appeals said the district court was wrong to apply McDonald-Douglas. The most recent decision from appellate court is from the 11th Circuit, 2007. That's the Nadler case. The Nadler case held that the district court erred by applying McDonald-Douglas to a reasonable accommodation claim. Unlike other traditional discrimination claims, reasonable accommodation claims do not require that the action be motivated by a discriminatory animus. The court there said, quote, we join our sister circuits and hold that McDonald-Douglas burden shifting is not applicable to reasonable accommodation cases. And then it went on to cite, you know, several circuits for that proposition, all of which, of course, we've included in our brief. In this court, in the 6th Circuit, in the Monette case, it's kind of an old case, 1996, ADA was in effect only for about five years, but this court anticipated the issue. The district court used a McDonald-Douglas analysis, and this court said that that was inappropriate. Instead, the analysis should have focused on the reasonableness of the accommodation requested in that case. The court went on to find that the plaintiff's request for leave was not reasonable, but at least it applied the appropriate analysis. This court has handled, decided at least three significant reasonable accommodation cases under the Fair Housing Act, Groner, Howard v. City of Beaver Creek, and Smith v. Lee. In none of those cases was McDonald-Douglas addressed or discussed. Can I ask a question here? Yes. The district court spends a lot of time on the factual background and then talks about a controversy between the parties about the proper standard to be applied, but it's not apparent to me from reading what Judge Trauger said that what you're arguing before her is the same thing you're arguing now. It doesn't appear that she really apprehends that the distinction is between a test that takes discriminatory intent into account and one that does not. Is that just her mistake, or is it in some way attributable to what you argued in the district court? With all due respect, it's her mistake. The defendants filed the motion for summary judgment. They didn't rely upon McDonald-Douglas. They relied on the Overlook case, which set forth the elements for reasonable accommodation. We filed briefs. We said there was a different case, but it was a reasonable modification case, but it was essentially the same elements. And we said if it is a reasonable accommodation case, then fine, Overlook applies. No one suggested that there should be any McDonald-Douglas analysis or there shouldn't be any confusion because there wasn't any. The lawyers didn't bother to raise it. That came from nowhere. Yes, yes. It would be like we've briefed the standard of a review for you people. It's de novo review on summary judgment. We both said that in our briefs. It's as if you came out with a decision that says we've reviewed this for abuse of discretion. No, we don't have to say don't review this for abuse of discretion. We've already told you how to review it, and we hope that you will do so. So I don't know how she got mistaken. It is true. If you look at the body of jurisprudence from the Sixth Circuit on fair housing, it's quite vast, and the vast majority of them apply McDonald-Douglas, but they're race cases or some other protected category. They're not disability reasonable accommodation cases. Now, Smith and Lee, I want to draw attention to the Smith and Lee case, also somewhat of an older case, 96. But in that, that's a fair housing case, the plaintiffs there presented both an intent case, said the city of Taylor, intended to discriminate against disabled people, and a reasonable accommodation case. On the intent case, this court said the intent claim fails. There is no evidence of an intent to discriminate because of disability. Dismiss the case. On the reasonable accommodation claim, this court said plaintiff wins. The liability was affirmed. The evidence established the essential elements of the claim. How can you reconcile that with Judge Trauger's opinion in this case? Smith and Lee basically got it right. If the claim is an intent to discriminate because of disability, you go through the McDonald-Douglas analysis. If the claim is simply reasonable accommodation, you don't. Now, I want to spend a minute on- Was a motion made to reconsider using this new test? Yes, yes. We pointed out the error to Judge Trauger. She basically said we'd waived it because we didn't address, neither party addressed the issue of the appropriate analysis. I beg to differ. Chuffnut Bend argued overlook. We argued Twinbrook. But we said we can live with overlook. Your position must be, since the defendant in this context is arguing that the standard she applied was the appropriate one, your position would be that its position has changed in view of its success under the district court's analytical framework. Chuffnut Bend had a strategic choice to make when we filed our brief, in this case, before you. We said the analysis was wrong and summary judgment was inappropriate. They could have either said, you know, you're right. Judge Trauger's analysis was wrong, but we should still win because there's no evidence of reasonableness or denial, which is what they argued before her in the first place. They chose not to do that. They chose to say she was right. There's no evidence of intent, and therefore we win. So they never briefed the other issues of the factual issues that Judge Trauger went through. But the answer is yes, they've put all of their bet on the McDonnell-Douglas analysis. Now I want to, before I run out of time, I want to just make clear that there's no misunderstanding about the choices in communities in this case because I think that was mentioned in the response brief and perhaps by Judge Trauger. Choices, I'm very familiar with the choices case. It was my case. I argued it here a year and a half ago. If you read the Court of Appeals opinion in the choices case, you will see nothing in there about reasonable accommodation. That's because that claim was abandoned in the district court. There was no analysis by this court of the reasonable accommodation claim in choices. If you need to go back and read the briefs, you can read the briefs. We did not argue reasonable accommodation up here. We did have a reasonable accommodation claim in the trial court. Judge Rice dismissed it, not under a McDonnell-Douglas analysis. He just said we couldn't meet the necessary element for a reasonable accommodation claim. And frankly, we decided to just let that lie. And we appealed solely on the intent claim in the choices case. And that's all that this court had before it. Judge Trauger cited a couple of other decisions from this circuit or in this circuit. Two of this court's decisions, Menser v. Princeton Square and Lindsey v. Yates, those are both race cases. They applied McDonnell-Douglas. Of course they did. There was no reasonable accommodation possibility there because they weren't disability cases. She also cited Ward v. Dickens, a Western District of Kentucky case from 2012. I would simply point out that the plaintiff in that case was pro se. There were no advocates. There were no attorneys representing the plaintiff. And I submit that was just wrongly decided to the extent that it relied upon McDonnell-Douglas. We've cited other cases in our brief from other circuits that are Fair Housing Act cases based upon reasonable accommodation claims. Giebler, Lapid, Laurel, Bryant, Woods, Loren, four different circuits. In none of those analyses of the plaintiff's claims is McDonnell-Douglas even mentioned. It's because it's not relevant. No one brought it up because intent is not a relevant provision. I've already addressed, I think, the issue of waiver on this point that Judge Trauger said in her Rule 59 motion. But I don't want to sit down before I point out the issue of standing. She also, sua sponte, without benefit of any briefing, held that the Hollis parents had no independent standing on their own to assert a claim under the reasonable accommodation provisions. That was without the benefit of any briefing. She did not cite there are no less than... The other side did not raise that. No, it did not raise it. The other side argued that we didn't have any provable damages because they said emotional distress has to be done by an expert, which we disagree with as a matter of the Fair Housing Act, and that there were no economic losses. Well, whether there were or there won't, there wasn't. Well, there was some evidence of that. I don't know how much it would value, but there's still the emotional distress. And Judge Trauger didn't cite any of the U.S. Supreme Court decisions on that issue. She didn't cite any decisions from this circuit, all of which hold standing under circumstances like this. She seemed to focus on the parental aspect. But the Hamad case, which is also from this circuit, the plaintiffs there were parents of the children. It was a familial status discrimination case. And the aunt of a young man who was less than 18. And the court found they had standing. So I think the court has to address that issue as well. I'm out of time, so I'll have a seat for rebuttal. Thank you. Good morning. Morning. I'm Gary Wilkinson. I represent the Chestnut Bend Homeowners Association in this case. First, I would like to focus the court, if I could. I think there's some sleight of hand with this argument about intent and distinction between reasonable accommodation cases and race cases. This is a reasonable modification case, not a reasonable accommodation case. But I don't think that that matters. In this case, the issue is what is the correct standard for discrimination cases. Housing discrimination, this court has decided, using a particular standard. Race discrimination cases, this court has decided, using a particular standard. The district court in this case used the correct standard. Let's look at that a little more closely. Yes, ma'am. Within the we have intentional discrimination cases, which are analogous to disparate treatment cases in employment law, right? I would disagree. I think the distinction is that there are cases where there is direct evidence. Well, that's a distinction that has been made, not in terms of what the ultimate thing is that the court is examining. That's just a way-you-prove thing. I'm saying in disparate treatment cases, which can also arise in the housing area, you were talking about whether the defendant intentionally discriminated on a prohibited basis, correct? Yes, ma'am. But then there are other kinds of cases that fall under the purview of the Fair Housing Act. There could be a disparate impact case, which would not require intent, proof of intent. And then there are these reasonable accommodation, reasonable modification cases, in which intent to discriminate on a prohibited basis would not seem to be a part of the legal analysis. Correct. I agree with that. You disagree with any of that? No, ma'am. Well, then, why is it problematic to import an analytical framework that is designed to apply to determine whether there's been intentional discrimination into the context of either a reasonable accommodation or reasonable modification case? Well, I would only disagree with the Court to the extent that I don't think that the McDonnell-Douglas standard of analysis is designed to determine intent. Well, tell me how it isn't. Well, because Mr. Dane says so, it doesn't make it so. I believe it's designed... How based on the McDonnell-Douglas standard is a way of considering the elements of a cause of action? Yes, ma'am. And the final thing you're looking at is what you're looking at in the prima facie case and what you're looking at in the final analysis is whether the plaintiff has ultimately carried the burden of proof. And you can look at that either by saying she has proved discrimination or she's raised sufficient questions about the defendant's basis being pretextual so that intent can be inferred. But whatever way you're approaching it, at the end of the day you're trying to figure out whether there's been intentional discrimination based on race or gender or whatever it is. I would disagree to the extent I think you're only looking to see whether the prohibited thing has been considered in a decision made by the decision maker, in this case, the homeowners association. Not necessarily that that's their only reason. And a close reading of this Court's own cases says that. So you take the position that even in the reasonable accommodation, reasonable modification cases, that the reason for the homeowners, say in this case the homeowners association's action, must be intentional discrimination based on disability? I don't think that it has to be intentional. I think the cases say that if the homeowners association considered the disability in their decision making, that's direct evidence. Therefore, you skip the McDonnell-Douglas three-level approach and go straight to, is the modification or accommodation requested a reasonable one? If they can prove that that is a reasonable modification request, reasonable accommodation request, then you skip to and shift the burden to the defendant to say, it places an undue burden on us. But you've got to get there first. It doesn't seem to have much to do with McDonnell-Douglas to me. That seems to me to have something to do with another standard that might require burden shifting, but doesn't seem to have much to do with McDonnell-Douglas. Well, McDonnell-Douglas itself has a burden shifting aspect to it. If there is no direct proof, and in this case there is not, that the decision maker considered, in this case a disability, in its decision with regard to, in this case, a requested modification, then the only way that the plaintiff can make their case is they have to prove by indirect or circumstantial evidence that they can make a prima facie case. You didn't argue in the district court for the adoption of a McDonnell-Douglas analysis, did you? I did not. And part of my argument before the court started asking questions was, or part of my statement to the court was, thank goodness Judge Trauger did her own research because I think both plaintiff's counsel and I had it wrong at that level. Admittedly, this is my first discrimination case. I'm just a poor old car wreck lawyer from Tennessee. Well, do you agree with the other side, then it should go back down and let the court make the correct analysis? No, sir, I think the court did make the correct analysis. Plaintiff's counsel argued the wrong standard at the trial court level. So did I. But the judge, in her opinion, stated, so I did my own research and here's what I found based on Sixth Circuit cases. And there are a number of them, including the ones cited by the plaintiffs in their brief. The Monette case has about eight pages of discussion about the McDonnell-Douglas analysis. The difference in the Monette case is that there was direct proof that the employer considered this gentleman's disability. Therefore, you skip the McDonnell-Douglas approach and go straight to reasonable accommodation, undue burden. In the Groner case, it was admitted and conceded and agreed by both sides that the decision maker there, the apartment complex, considered Mr. Groner's disability in their decision to evict him. So there was no need for the McDonnell-Douglas burden-shifting analysis. You go straight to... But both of those cases are cases in which you're dealing with allegations of disparate treatment. Well, I don't know that that's true. Monette may have had some discussion of that. I don't think that Groner did. Groner was a straight reasonable accommodation case. Facts of that case being Mr. Groner was severely mentally disabled. He liked to scream and yell and slam doors. His neighbor at the apartment didn't like that and asked that something be done. Over a period of time, they tried several solutions. None of them worked. And so the apartment chose to evict him. He proposed as a reasonable accommodation, well, move me someplace else. And the court found, well, that's not really reasonable because your neighbor, wherever you end up, is not going to like it either, along with several other things. So Mr. Groner did not prevail in that case. There are other Sixth Circuit cases, those that were cited by the trial court. Mincer v. Princeton Square, that's a Fair Housing Act case. Lindsey v. Yates, a Fair Housing Act case. Granted, those two did involve race, but they also applied the McDonnell-Douglas analysis. The Choices in Community Living case, which Mr. Dayen throws stones at, is also a Fair Housing Act case. And in that case, they also applied McDonnell-Douglas. They adopted a very low threshold and they still couldn't make a prima facie case, nor could they show any pretext in that case, and therefore they were not successful. In the case at bar, I apologize if that's me, I don't know. So let's, to revisit, if there is no direct evidence of consideration of discrimination or of consideration in this case of the disability, then you have to go through the three-step McDonnell-Douglas analysis. Can the plaintiff prove a prima facie case? If so, the burden shifts to the defendant to show a legitimate non-discriminatory reason for its decision. If the defendant can do that, the burden shifts back to the plaintiff to prove that defendant's legitimate non-discriminatory reason is nothing other than a pretext. I want to clarify a discussion that you and I had a few minutes ago. I have pulled out of my file, fortunately, both Monette and Groener. Monette is an ADA employment discrimination case dating back to 1996, in which the court discusses the proper analogy between ADA cases and Title VII employment cases and recognizes that the McDonnell-Douglas analysis has validity in the ADA context. Do you disagree with that? No, ma'am. Groener, which I understood you to say, also employed the McDonnell-Douglas standard. As best I can tell, it does not. No, ma'am. It's a reasonable accommodation case, and it does not apply to McDonnell-Douglas. And it does not because there was— Did I misunderstand you? Yes, ma'am. Okay. What I said or intended to say was that in the Groener case, there was direct evidence that the apartment complex considered Mr. Groener's disability in its decision-making. Therefore, you skip McDonnell-Douglas. In fact, there, both parties agree. There's nothing about Groener that gives any indication that the court was skipping McDonnell-Douglas because of a reliance on direct evidence as opposed to circumstantial, is there? I believe there is, in my reading.  Yes, ma'am. But the court does not say that, does not mention McDonnell-Douglas, does not contemplate any other analytical framework other than the one employed, right? Correct. Very—absolutely the truth. All right. So in this case, Judge Trauger took my overlook, here's what you need to make a prima facie case, the plaintiff's twin brook, here's what you need to make a prima facie case, and she applied the Overbrook case, which was the most difficult way to make the prima facie case, and said even assuming all that, the plaintiff makes a prima facie case, which shifted the burden to the Chestnut Bend Homeowners Association to show a legitimate non-discriminatory reason for its decision, which it did. It's backing up its covenants, rules, and restrictions. It's maintaining the standards of the neighborhood and the architectural design elements of the neighborhood. And the judge said even though the Homeowners Association was fastidious, and in this case used the word persnickety even as to their application of the rules, there was nothing about the way they applied those rules, there was nothing about the way that they analyzed the request for a modification that changed once they learned that it was supposed to be for the Hollis' children. There was nothing in the record that indicated that there was a pretext of any kind. In fact, Mr. Hollis testified at his deposition that he didn't think that the board considered the disability in making its decision. Therefore, it's our position that the analysis stops at that point. Plaintiffs cannot make a prima facie case and therefore can't show the pretext, and therefore the analysis stops. That's what Judge Trauger did. We think she did the analysis correctly. We think that her ruling was correct, and we'd ask the court to affirm the ruling grant of summary judgments to the defendant. Thank you. Thank you. Just a few points, Your Honor. If McDonnell-Douglas is not about intent, then what's the point of the pretext part of the analysis? It's all about intent, and the reason it is applied is because in traditional discrimination cases, intent is something that has to be proven. That's why it applies. In the reasonable accommodation cases, you don't need any kind of inferences, and if Mr. Wilkinson wants to argue we needed to go through McDonnell-Douglas because there's no direct evidence, well, we had direct evidence. We had evidence of a refusal. We have evidence of a request. Judge Trauger found that the request was reasonable, at least reasonable enough to submit to a jury. It was all direct evidence. There was no circumstantial inferences that had to be demonstrated. So even in that analysis of McDonnell-Douglas, McDonnell-Douglas doesn't apply. What do you think of the idea of using the McDonnell-Douglas burden shifting not to show discriminatory intent, to show invidious intent, but to show that there was intent not to afford a reasonable accommodation, and based upon the intent to do that, the burden shifts back. So you applied McDonnell-Douglas in a different way to have burden shifting. It's just slightly modified. What do you think of using McDonnell-Douglas that way? Well, I would rather recast your point, and what I would agree with is that there is burden shifting that is appropriate in reasonable accommodation cases, but it is not on the element of intent. In most reasonable accommodations, once the plaintiff has shown the necessary elements, reasonableness, et cetera, disability request, denial, and so forth, there is a shift in the burden for the defendant to show that the request, and the courts are a little bit different on this, either it's unreasonable under the circumstances of that individual setting, or that it imposes an undue burden on the defendant to make the accommodation. That's a shifting burden. Okay, and it's up to the defendant to articulate what is the burden and show evidence of it. If they do, then your issues are joined, you go to a jury trial. But the shifting is not on the intent issue. It's on the issue of the necessary elements of the case and the defense to it. I just want to sort of close up by pointing out the reason why intent is really not appropriate is this. When Congress passed the Fair Housing Act, as well as the Rehabilitation Act and the ADA, it found that discrimination against people with disabilities is not usually the result of evilness or malicious animus towards people with disabilities. The congressional record says it's because of benign neglect. There are barriers that exist, or there are barriers that must come down. And that's why they added this special provision in the Act 3604 F3, which says discrimination shall be defined to include a refusal to take certain action, accommodations, modifications, and actual construction. Intent was not on Congress's radar for those types of claims because that was not the problem that it was seeking to address. Thank you. Thank you. And the case is submitted. We'll take a short break in about five minutes before we call the next case.